# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1138 | **DATE** | 10/4/2012 |
| **CASE TITLE** | Battle vs. O'Shaughnessy, et al. | | |

**DOCKET ENTRY TEXT**

Final pretrial conference was held in this case on October 2, 2012. Defendants' motion to bar Lorenzo Chew as a witness [#72] is granted in part and denied in part. Defendants' motion to bar reference to Officer O'Shaughnessy's sustained CR and suspension is denied. Plaintiff's motion to reconsider the court's ruling on defendants' motion *in limine* number 19 [#74] is granted. Plaintiff's motion to introduce FRE 608(b) evidence [#85] is denied. Jury trial is set to begin on October 29, 2012 at 9:15 a.m.

■[ For further details see text below.]    Docketing to mail notices.

## STATEMENT

**Defendants' Motion to Bar Lorenzo Chew as a Witness** [#72]

Battle seeks to call Lorenzo Chew, a Chicago Park District employee whose name and signature appear on a criminal complaint charging Battle with an Chicago ordinance violation for being on Park District property after hours. At his deposition, Chew testified that he had never seen the complaint before, had not signed the complaint, and that he did not recognize the handwriting on the document. Defendants argue that Chew's testimony is not relevant to this case because Chew has no knowledge of the facts giving rise to Battle's claims and because Battle has not brought a claim for false arrest or for malicious prosecution based on the complaint signed by Chew.

Battle first argues that Chew's testimony would provide circumstantial evidence of malice for the purposes of his malicious prosecution claims against Officer O'Shaughnessy ("O'Shaughnessy"). He argues that the jury could make the following inferences if Chew were allowed to testify: (1) O'Shaughnessy filled out the falsified complaint because it was filed simultaneously with the three other complaints that she signed, (2) O'Shaughnessy intentionally filed a criminal complaint against Battle for an offense that should only have been punishable by the imposition of a civil fine, and (3) O'Shaughnessy intentionally filled out a misdemeanor offense for a charge that she reasonably knew was false. Battle asserts that these inferences are supported by the following undisputed facts. First, the complaint for being on Park District property after hours states that Battle had violated Chicago ordinance 10-36-185. That ordinance does not impose a criminal penalty. The ordinance states that the Chicago Police Department shall have the authority to enforce the provisions of the Chicago Park District Code relating to the use of parks, harbors, and concession services and that any person who violates these provisions shall be subject to a fine. *See* MCC 10-36-185(a)–(b). Indeed, when witness Donnell Digby was charged with being on Chicago Park District property after hours, he was charged via a ticket that was signed by O'Shaughnessy, rather than a criminal complaint. Second, the

**STATEMENT**

complaint for being on Park District property after hours was filed on the same date and in the same courthouse as three other complaints charging Battle with aggravated assault of a peace officer, battery, and drinking on the public way. O'Shaughnessy was the complainant listed on the three other complaints. The same court clerk signed each complaint.

Even taking all of these facts into account, Chew's testimony is unlikely to be helpful to the jury on the issue of malice. It is not certain that O'Shaughnessy filled out the falsified complaint. In addition, Battle has not brought a malicious prosecution claim based on the ordinance violation charge. Therefore, if Chew were allowed to testify, it would create a risk of a confusing and unnecessary mini-trial on the issue of whether the ordinance violation complaint was falsified, and by whom.

Battle also argues that he should be allowed to call Chew as a rebuttal witness if defendants argue that he was properly arrested for being on Chicago Park District Property after hours. He asserts that the City ordinance has a curfew of 11:00 p.m. for fenced in park areas, the beach, and the area next to the beach. According to Battle, the City's own event queries show that Battle was tazered at 10:33 p.m. Battle concludes that there is an issue of fact as to whether he violated any ordinance, and that Chew will be able to provide relevant testimony regarding the curfew hours at the 12th Street Beach.

The court reserves ruling as to whether Chew may provided limited testimony on the issue of the Park District curfew hours at the 12th Street Beach, where Battle was arrested. The court cannot conclude that there are no circumstances under which Chew's testimony might provide relevant rebuttal evidence. The court notes, however, that Battle has not brought a false arrest claim or a malicious prosecution claim based on the city ordinance violation. He will not be permitted to create a mini-trial on this issue. Moreover, in order to determine whether an arrest or prosecution is supported by probable cause, the relevant facts are those known to the officers at the time of the arrest. *Holmes* v. *Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). When an officer makes a mistake of fact, the finder of fact must only consider whether the mistake was reasonable. *United States* v. *McDonald*, 453 F.3d 958, 962 (7th Cir. 2006). Therefore if the defendant officers reasonably believed that they had arrested Battle after 11:00 p.m., then the rebuttal testimony outlined by Battle might not be necessary. A mistake of law, on the other hand, cannot support probable cause or reasonable suspicion. *Id.* at 961; *see also United States* v. *Levy*, 990 F.2d 971, 973–73 (7th Cir. 1993) (no probable cause to arrest defendant for solicitation of charitable funds without a permit, as no reasonable person could conclude that defendant's conduct violated Village of Evergreen Park ordinance). Thus if the defendant officers believed that they arrested Battle before 11:00 p.m., then Chew's testimony might be relevant to establishing a mistake of law.

Finally, Battle argues that Chew's testimony is relevant to damages for his malicious prosecution claim. He has not cited any cases supporting the conclusion that a plaintiff may receive damages arising from a criminal complaint that is not part of his criminal prosecution claim. Chew's testimony will not be admissible to prove damages.

**Defendants' Motion In *Limine* No. 17 To Bar Reference to Officer O'Shaughnessy's Sustained CR and Suspension**

The court previously reserved ruling on this motion so that it could review a full copy of the sustained CR. After reviewing the sustained CR, the court concludes that under Federal Rule of Evidence 608(b), Battle may inquire about it to attach O'Shaughnessy's character for truthfulness.

**STATEMENT**

  Rule 608(b) allows impeachment of witness by questioning about specific instances of conduct for the purpose of attacking the witness's character for truthfulness. The purpose of the rule is "to allow a party to attempt to cast doubt on a witness's reliability for telling the truth." *Varhol* v. *Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990). Acts of deceit usually raise this doubt, and an instance of misconduct need not be punishable as a crime in order to reflect the witness's character for truthfulness. *See id.* (Amtrak employee's prior suspension for purchasing stolen train tickets could be inquired about on cross-examination under Rule 608(b)).

  In November 2001, the Chicago Police Department Internal Affairs Division sustained a complaint against O'Shaughnessy that alleged that she had falsified an official police report relating to damage to CPD vehicle. The summary of investigation states that three officers had reported that on July 3, 2001, they were passengers in a vehicle that O'Shaughnessy was driving. The three officers reported that O'Shaughnessy had struck a large dumpster while she was parking the car in an alley and that she had damaged the vehicle on the rear passenger side of the door. The sergeant who was assigned to investigate the damage to the car reported that O'Shaughnessy had told him that she had observed the damage for the first time when she returned the vehicle to the District Station and that the damage had occurred while the car was parked. She also told the investigating sergeant that she had no first hand knowledge of how the damage was done to the vehicle. The investigating sergeant prepared a vehicle traffic crash or damage report that stated that the vehicle had been parked in an alley and that the officers observed the damage to the right rear passenger door when they returned to the vehicle. The sergeant called Officer O'Shaugnessy on the phone and read the report to her. She confirmed that the contents of the report was correct, accurate, and truthful.

  After conducting an investigation, an Internal Affairs Division investigator concluded that O'Shaughnessy should be suspended for three days because the allegation was supported by substantial evidence. The investigator concluded that she had violated Rule 2 of the Chicago Police Department Rules of Conduct, which prohibits "[a]ny action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department," because she had given false information to a supervisor which resulted in a falsified Department record. The investigator concluded that she had violated Rule 5 of the Chicago Police Department Rules of Conduct, which covers the "[f]ailure to perform any duty," by failing to notify her supervisor that there had been an accident and then giving false information to her supervisor. In making this determination, the investigator necessarily refused to credit O'Shaughnessy's version of events, as she denied that she had been questioned about the vehicle damage and stated that she was not aware that the car had struck a dumpster.

  Battle will be allowed to cross-examine O'Shaughnessy regarding the sustained CR because the fact that she was previously disciplined for providing false information on a police report is probative to her character for truthfulness. Defendants argued, at the last pretrial conference, that the sustained CR is not admissible under Rule 608(b) because the specific Rules of Conduct that O'Shaughnessy violated do not relate to acts of deceit or fraud. *Compare with* Rule 14 ("Making a false report, written or oral"). The facts underlying the CR clearly relate to the falsification of an official report, however. In addition, the complaint that initiated the investigation alleged that O'Shaughnessy had falsified an official police report. These facts indicate that the sustained CR relates to an act of fraud or deceit that falls within the ambit of Rule 608(b).

  Battle will not, however, be permitted to submit extrinsic evidence of the sustained CR, such as the CR documents, for the purpose of attacking O'Shaughnessy's character for truthfulness. *See* Fed. R. Evid. 608(b) ("[s]pecific instances of conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence"); *United States* v. *Dawson*, 434 F.3d

956, 958 (7th Cir. 2006) ("There would have been a problem in this case had the defendants' lawyer asked 'has any federal judge ever found that you lied on the stand?' and when the witness answered 'no' the lawyer sought to have the [prior] judge's finding placed in evidence. That would be 'extrinsic evidence' and would be barred by Rule 608(b) if the evidence were being used to undermine the witness's 'character for truthfulness.'"); *Weinstein's Federal Evidence* §§ 608.20, 608.22.

**Plaintiff's Motion to Reconsider the Court's Ruling on Defendants' Motion In *Limine* No. 19 Regarding Plaintiff's Unpaid Medical Bills** [#74]

Battle filed a motion to reconsider this court's ruling on defendants' motion *in limine* No. 19, which sought to bar his unpaid medical bills. Battle produced medical records and emergency room bills from Northwestern Memorial Hospital ("Northwestern") and Advocate South Suburban Hospital ("Advocate"). Battle incurred charges from Northwestern totaling $1,872.00 for a chest X-ray, electrocardiogram, and ER outpatient visit. Battle also incurred charges from Advocate totaling $2,436.80 for an EKG, laboratory tests, and the ER outpatient visit. Neither of the bills has been paid.

In order to recover for medical expenses, a plaintiff must prove that he has paid or will become liable to pay a medical bill, that the necessarily incurred the medical expenses because of defendants' conduct, and that the charges were reasonable for services of that nature. *See, e.g.*, *Arthur* v. *Catour*, 833 N.E.2d 847, 853–54, 216 Ill. 2d 72, 295 Ill. Dec. 641 (2005). If a bill has already been paid, there is a rebuttable presumption that it is reasonable, based on the principle that the plaintiff would not have paid the bill if it did not represent the fair market value of the services. *Id.* at 854. "In a case in which the plaintiff seeks to admit a bill that has not been paid in whole or in part, he or she must establish reasonableness by other means—such as by introducing the testimony of someone having knowledge of the services rendered and the reasonable and customary charge for such services." *Wills* v. *Foster*, 892 N.E.2d 1018, 1025, 229 Ill. 2d 393, 323 Ill. Dec. 26 (Ill. 2008). Courts have further required expert testimony on the reasonableness of unpaid medical bills as the average layperson does not have knowledge of the rates charged for medical services in a particular area. *See* Fed. R. Evid. 702; *Haack* v. *Bongiorno*, N0. 08 C 2488, 2011 WL 862239, at *6–7 (N.D. Ill. Mar. 4, 2011); *Kunz* v. *Little Co. of Mary Hosp. & Health Care Cntrs.*, 869 N.E.2d 328, 338, 373 Ill. App. 3d 615, 311 Ill. Dec. 654 (Ill. App. Ct. 2007).

On June 19, 2012, Battle amended his Federal Rule of Civil Procedure 26(a)(2) disclosures identifying Angel Covington, an external vender liaison at Northwestern, and Monica Lilja, a patient accounts representative at Advocate, as expert witnesses who had knowledge of the services rendered and the usual and customary charges for those services. Defendants object that this disclosure is untimely and that this evidence should be precluded under Rule 37(c)(1).

Rule 26(a)(2)(D) requires the timely disclosure of expert witnesses. In the case of expert witnesses who will not provide a written report, Rule 26(a)(2)(C) requires identification of the subject matter on which the witness will be called to present and a summary of the facts and opinions upon which the witness will testify. Fed. R. Civ. P. 26(a)(2)(C). "Under Rule 37(c)(1) exclusion of non-disclosed evidence is automatic and mandatory ... unless non-disclosure was justified or harmless." *Tribble* v. *Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (internal quotations marks omitted). The Seventh Circuit has identified factors in determining whether non-compliance with Rule 26 is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.*

**STATEMENT**

Here, Battle produced the unpaid medical bills and identities of those persons who will offer testimony that these bills reflect a reasonable amount for the medical services provided far enough in advance of the October 29, 2012 trial date to obviate any prejudice or surprise to the defendants. Namely, on October 21, 2011, Battle produced the underlying medical bills, and on June 19, 2012, plaintiff amended his Rule 26(a) disclosures identifying Covington and Lilja as experts who would testify that the bills are reasonable and customary. Accordingly, Battle's motion to reconsider is granted and he may present evidence regarding his unpaid medical expenses at trial.

**Plaintiff's Motion *In Limine* No. 15 - Notice of Intent to Introduce FRE 608(b) Evidence** [#85]

Battle seeks to question O'Shaughnessy in connection with her role in presenting an affidavit for a warrant issued in 2009 to search a single family home at 4340 West Gladys Avenue in Chicago, Illinois.

On December 21, 2008, Chicago Police Officer Castaneda was dispatched to the residence at 4340 West Gladys Avenue, at which time she encountered a man and two dogs outside the residence in below-freezing weather. The man refused to provide his name to Castaneda. Although the unidentified man could have been arrested at the time for keeping dogs outside in frigid conditions, Castaneda did not make an arrest. Instead, Castaneda used the Chicago Police Department's CLEAR data system to determine the man's identity. Based on his physical description, the CLEAR system pulled the profile of Lennell Jones, who Castaneda concluded was the man standing outside the residence. On December 26, 2008, Chicago Police Officer Christopher conducted a follow-up investigation and stated that she met Lennell Jones, who was using the alias Derrick Johnson.

On January 2, 2009, O'Shaughnessy, who had not been present at the residence at 4340 West Gladys Avenue previously with Officers Castaneda or Christopher, executed an affidavit requesting a search warrant for the residence. O'Shaughnessy stated that the search warrant was necessary to search Lennell Jones, the residence at 4340 West Gladys Avenue, and to seize any dogs in violation of 720 Ill. Comp. Stat. 5/12-36 (possession of certain dogs by a felon). The residence at 4340 West Gladys Avenue, however, was not occupied by a person named Lennell Jones. Rather, Darnez and Mickin Perkins lived at 4340 West Gladys Avenue and they had no knowledge that a Lennell Jones had ever been in their home. The Perkins were subsequently arrested and their dogs were seized.

On April 22, 2009, Judge Luckman, presiding in the Circuit Court of Cook County, Criminal Division, held a *Franks* v. *Delaware*[1] hearing, and quashed the search warrant. Judge Luckman ruled that "I am making a very, very reluctant decision. I am not saying that to cover what I'm doing. We got a situation, an officer for 11 and a half years comes to a house and it's obvious that there is a crime committed and not the crime that's alleged, that the gentleman was a felon. I have no idea why when this particular situation occurred these two dogs are out possibly in equivalence to 15 degree [sic] zero which is certainly a violation of the cruelty of animals and certainly an owner's duty since there was no food or water out there. There should have been an immediate arrest and the fact that he locks himself in his house is insufficient. The police officer has - - they have to call dispatch. Bring somebody here. Let's arrest him now. Then you go ahead. You got a whole week, more than a week to find out who lives here. When I sign a search warrant - - I have signed a minimum of 500 in my career. I want to know where they get all that information, where they get this Mr. Jones, et cetera. The search warrant on its face was invalid. Unfortunately, the motion to quash is sustained. What's next, Counsel? He should have been arrested right then and there without any question. The fact that the police officer is not a member of Animal Cruelty, that's insufficient. She was working. She couldn't get in the place. She had a sergeant. The sergeant should know something about what the law is and what's the charges. Not even close. The search warrant is quashed."

Battle argues that Federal Rule of Evidence 608(b) allows for introduction of evidence regarding

**STATEMENT**

O'Shaughnessy's role in procuring a search warrant that was based on false information. "Rule 608(b) allows cross examination of the witness about prior instances of misconduct that reflect on the truthfulness of that witness." *United States* v. *Badger*, 983 F.2d 1443, 1453 (7th Cir. 1993). Still, "the probative value of such evidence must still not be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Hollins* v. *City of Milwaukee*, 574 F.3d 822, 828–829 (7th Cir. 2009).

     As Defendants note, however, O'Shaughnessy relied on the investigation of other Chicago Police officers when drafting her affidavit to obtain a search warrant for the Perkins' home. No evidence exists that O'Shaughnessy presented false testimony in the Perkins matter; rather, she relied on incorrect information. *See, e.g., Martin* v. *United States*, No. 02 CR 10024, 2007 WL 1016985, at *4 (W.D. Mich. March 29, 2007) ("There is no evidence that [the ATF agent] perjured herself in [a prior federal] case, but only that she used unreliable hearsay from [Detroit Police Officer] officers [] as evidence in her affidavit supporting the complaint. Thus, there would be no basis to impeach her at Petitioner's trial under F.R. Evid. 608(b) for a prior act of knowingly giving false testimony under oath."). In addition, Judge Luckman did not make any findings that O'Shaughnessy specifically lied or provided untruthful information. Accordingly, this evidence will be precluded as any probative value would be outweighed by unfair prejudice. *See, e.g., United States* v. *Stoecker*, 215 F.3d 788, 790 (7th Cir. 2000) (district court acted within its discretion in precluding cross-examination concerning FRE 608(b) material because it was "unrelated and far too remote to be probative and it would have been unfairly prejudicial."). Plaintiff's motion is thus denied.

---

1. In the *Franks* hearing, the Perkins' attorney argued that Officer Castaneda used the CLEAR database to pick out a felon (Lennell Jones) so that the police could obtain the warrant (*i.e.*, it would be easier to obtain a search warrant if a felon was living at 4340 West Gladys Avenue). The Perkins' attorney further argued that the police knew Lennell Jones did not live there but picked him from the CLEAR database regardless to ensure that they obtained a warrant.