IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN BATTLE ) | |
| ) | |
| Plaintiff, ) | |
| ) | No: 11-cv-01138 |
| v. ) | |
| ) | |
| CHICAGO POLICE OFFICERS ) | Honorable Joan H. Lefkow |
| O'SHAUGHNESSY (Star #16499), ) | |
| OSBORN (Star #8137), and the ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | **JURY DEMANDED** |

**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON HIS CLAIM FOR EXCESSIVE FORCE**

Now comes Plaintiff, Brian Battle, by and through his attorneys, and hereby moves pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law on his Section 1983 excessive force claim against Defendant Osborn. In support, Plaintiff states as follows

**Introduction**

The following facts are undisputed: On May 24, 2010, Plaintiff was at the 12th Street Beach in Chicago when he was first approached by Defendant O'Shaughnessy. O'Shaughnessy yelled that Plaintiff had hit her and was then immediately joined by Officer Jasinski and Defendant Osborn, who had not seen Plaintiff batter O'Shaughnessy. Osborn, O'Shaughnessy, and Jasinski handcuffed Plaintiff. Osborn took Plaintiff to the ground. While Plaintiff was on the ground, laying on his back with his hands cuffed behind his back, Osborn used the taser to "drive-stun" Plaintiff. After the first "drive-stun", Osborn again used his taser to drive-stun Plaintiff. To drive-stun an individual means that the taser gun is placed directly on a person's body and electricity passes through the gun to cause pain and incapacitate the individual.

1

Defendants O'Shaughnessy and Osborn testified that Plaintiff did not make contact with them at all once he was on the ground and did not try to flee the arrest once he was on the ground.

In light of the recent Seventh Circuit decision in *Phillips v. Community Insurance Corp.*, 678 F.3d 513 (7th Cir. 2012), and the undisputed facts that Plaintiff was handcuffed and on the ground both times he was hit by the taser in drive-stun mode, Plaintiff now moves this Court for judgment as a matter of law on Plaintiff's Section 1983 excessive force claim.

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 50, Judgment as a matter of law is proper when a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135, 120 S. Ct. 2097, 2102, 147 L. Ed. 2d 105 (2000); Fed. R. Civ. P. 50. The standard for judgment as a matter of law under Fed. R. Civ. P. 50, mirrors the standard for summary judgment under Fed R. Civ. P. 56. *Id.* As such, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. *Id.*

## Argument

Plaintiff is entitled to judgment as a matter of law on his excessive force claim because of one critical, undisputed fact: Plaintiff was handcuffed behind his back when he was tased by Osborn directly in the chest.

In this case, Plaintiff has proven that Osborn's use of the taser against a handcuffed arrestee, who was on the ground and surrounded by at least three law enforcement officers, was objectively unreasonable as a matter of law. Indeed, Osborn himself admitted that Plaintiff was

handcuffed and on the ground and that Osborn stunned Plaintiff twice with the taser gun. Plaintiff testified that he felt excruciating pain both times he was tasered.

As the Seventh Circuit has explained, "objective reasonableness of force is a legal determination rather than a pure question of fact for the jury to decide." *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003). Indeed, the Seventh Circuit explained in *Phillips* that, "in an excessive force case, while we accept the factual inferences made by the jury, we must independently review the jury's interpretation of what is reasonable under the Fourth Amendment." *Id at 520*. (citing *Bell v. Irwin*). The court reasoned that "independent review is particularly warranted when, as here, the material facts of the case are essentially uncontroverted." Id.

The central question in Phillips was whether the officers' use of a SL6 baton launcher against an intoxicated, non-aggressive plaintiff who made no attempt to escape after a traffic stop. Id. at 524. In rejecting Defendants' contention that the plaintiff's disobeyance of verbal commands justified their use of force, the Seventh Circuit noted that "it would have been passive noncompliance of a different nature than the struggling that we have found warrants the escalation of force." Id. at 525. The court put great weight in this distinction and citing Smith, noted that "finding that what the officers perceived as willful noncompliance was not the same as 'actively resisting' but instead a passive 'resistance *requiring the minimal use of force*.'" Smith, 295 F.3d at 771. The distinction as a critical one, as evidenced by the cases cited by the Seventh Circuit in Phillips.[1]

---

[1] The *Phillips* court cited the following: *Cyrus,* 624 F.3d at 863 (no evidence suggesting that the plaintiff "violently resisted" officers even if plaintiff refused to release arms for handcuffing); *Estate of Escobedo v. Bender,* 600 F.3d 770, 780–81 (7th Cir.2010) (plaintiff threatening suicide was not actively resisting arrest even though he said he was intoxicated, had a gun, and had barricaded himself in his room and refused to come out for three hours); *Mattos v. Agarano,* 661 F.3d 433, 450 (9th Cir.2011) (en banc) ("[W]e draw a distinction between a failure to facilitate an arrest and active resistance to arrest."); *Griffith v. Coburn,* 473 F.3d 650, 653, 659 (6th Cir.2007) (use of chokehold on plaintiff who was leaning back but resisting only passively by trying to put arms behind his back and refusing to cooperate with officer's commands was unreasonable).

Importantly, the Phillips decision reiterated the principle that "'force is reasonable only when exercised in proportion to the threat posed." *Id.*, citing *Cyrus v. Town of Mukwonago,* 624 F.3d 856, 863 (7th Cir. 2010). In deciding whether, to put it simply, force matched resistance, the court made the following observation:

> We must view the severe force that officers used on Phillips in light of the fact that any threat she presented had already been substantially contained. The officers had her vehicle surrounded with seven squad cars, and behind the vehicle there was a steep drop-off. There was nowhere for Phillips to go. Officer Hoffman himself told the dispatch that the driver was "secured, not in handcuffs, but stabilized in the car." The scene was "secured" at least fifteen minutes before officers shot Phillips. During that time, Phillips had given no indication that she intended to harm the officers or anyone else.

Similarly here, there was no escalation or change in circumstances that called for the immediate action of tasering Battle twice. Battle remained prone, handcuffed behind his back; he did not try to get up and run away; no one interfered with his arrest; and at least three Chicago police officers stood within several feet of him. In short, Battle had nowhere to go.

Furthermore, the Phillips court held that "the force used surpassed the level permissible under the Fourth Amendment to effectuate Phillips's arrest." *Id.* at 527. The court reasoned that "[p]ermitting substantial escalation of force in response to passive noncompliance would be incompatible with our excessive force doctrine and would likely bring more injured citizens before our courts." Id. Here, Defendant Osborn escalated the force used against Battle twice: first when he drive-stunned Plaintiff after Plaintiff had done nothing but swear and passively move his legs and again when, after Plaintiff was already tasered once, Osborn drive-stunned the Plaintiff again. Such actions surpass the level of force permissible under the Fourth Amendment to effectuate Plaintiff's arrest for an alleged misdemeanor and ordinance violations. Only Osborn testified that Plaintiff's kicks actually made contact with him, and that minimal contact was well before Plaintiff was taken down.

4

Finally, even if this Court finds that the first drive-stun of Plaintiff was not objectively unreasonable, there can be little question that the second application of the taser in drive-stun mode entitles Plaintiff to judgment as a matter of law as the totality of the circumstances of his excessive force claim. As also noted with approval in *Phillips*, "it is not objectively reasonable to ignore specific facts as they develop (which contradict the need for this amount of force), in favor of prior general information about a suspect." *Phillips*, (citing *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 666 (10th Cir. 2010)). Even if Osborn believed Plaintiff was kicking in his direction, Osborn cannot ignore the specific facts as they developed, namely, that Plaintiff was on the ground, handcuffed, had already been dry-tased once, and was no longer a threat.

## Conclusion

Accordingly, Plaintiff requests that this Court enter judgment as a matter of law on Plaintiff's excessive force claim.

Respectfully submitted,

s/ Mary J. Grieb
Mary J. Grieb

s/ Brendan Shiller
Brendan Shiller


Shiller Preyar Law Offices
1100 W. Cermak, Suite B401
Chicago, IL 60608
(312) 226-4590

## **CERTIFICATE OF SERVICE**

The undersigned Mary J. Grieb hereby certifies that a copy of the foregoing was served upon all opposing counsel via the EM/ECF email system.

Respectfully submitted,

____s/ Mary J. Grieb_____

Mary J. Grieb
Shiller Preyar Law Offices
1100 W. Cermak, Suite B401
Chicago, IL 60608
(312) 226-4590